# CIRCUIT COURT OF LOUDOUN COUNTY

Kin-Sing Au et al.

v.

ADSI, Inc., et al.

October 1, 2007

Case No. CL 44112

BY JUDGE THOMAS D. HORNE

Plaintiffs in this consolidated case are investors in ADSI, Inc., a Virginia stock corporation. On January 22, 2007, these investors filed with the Court the instant complaint pursuant to the Multiple Claimant Litigation Act, Va. Code Ann. §§ 8.01-267.1 through 8.01-267.9. All plaintiffs had filed earlier individual claims that had languished on the docket for some time. Common to the complaints voiced by the plaintiffs are various issues relating to the stock solicitation of ADSI, Inc. Accordingly, a joint hearing was conducted as to certain of those claims. Va. Code Ann. § 8.01-267.3. Specifically, the evidence presented and briefs filed related to allegations of state securities fraud in the stock solicitation and for money had and received. Accordingly, it is only those issues that are to be addressed at this time.

It is unlawful for persons to offer to sell or sell securities fraudulently or by means of the misleading omission of material facts. Va. Code Ann. § 13.1-502. Those who so sell securities unlawfully or by means of an untrue statement of a material fact or omission may be held liable to the person purchasing the security for the consideration paid for that security, interest at the rate of six percent, costs, and reasonable attorneys' fees, less the amount of

income received on the security. Va. Code Ann. § 13.1-522(A). A purchaser is entitled to recovery upon tender of the security. Should the purchaser no longer own the security, he or she is entitled to "a substantial equivalent in damages." *Id.*

In addition to persons who sell securities, liability may attach to those, among others, who directly or indirectly are in control of the seller ("control persons"), including partners, officers, and directors of the seller. For the purposes of this case, ADSI, Inc., is the "seller" of the securities, while the other defendants, if liable, would be accountable to the purchasers of the stock as "control" persons.

As previously noted, plaintiffs are individuals who purchased stock in ADSI, Inc., during the period from August 20, 2000, though February 28, 2002. In addition to ADSI, Inc., defendants are K. Prasad Nair, Evelyn Neil, Stephen B. Heppe, and Project Management Enterprises, Inc. Project Management Enterprises (PMEI) is a Maryland Corporation whose sole principle and shareholder is K. Prasad Nair. Mr. Nair is a Maryland resident, founder, Chief Executive Officer, and Director of ADSI, Inc. PMEI is the majority shareholder in ADSI, Inc., Evelyn E. Neil is the wife of Mr. Nair and a Maryland resident. She was a director of ADSI, Inc., at the time plaintiffs acquired stock in the corporation and has served as the corporation's Secretary and Treasurer. Stephen B. Heppe was a founder of ADSI, Inc., and acted as President and Director.

Should the Court determine that one or more of the defendants acted as a seller or control person and that materially false or misleading information was also conveyed in connection with such sale of securities, then the burden of avoiding liability shifts to the defendant(s). In the case of the seller of securities, ADSI, Inc., must prove that it did not know, or in the exercise of reasonable care could not have known, of such untruth or omission. Va. Code Ann. § 13.1-522(A). With respect to those identified as control persons, he or she must establish that they did not know and, in the exercise of reasonable care, could not have known of the existence of the facts by reason of which liability is alleged to exist. Va. Code Ann. § 13.1-522(C).

In order to recover, it is not necessary that the plaintiff prove reliance or causation. There is no obligation imposed upon the purchaser to make a further due diligence investigation. Liability of the seller and control persons arises out of the privity relationship created by the transaction. *Dunn v. Borta,* 396 F.3d 421 (4th Cir. 2004).

In the instant case, the Court finds that the defendant, ADSI, Inc., was a seller of securities and that the other defendants were control persons subject to liability in the event the Court were to find that the transactions were made in violation of the relevant provisions of the Virginia Securities Act.

By letter dated January 23, 1995, the Swedish Civil Aviation Administration (SCAA) accepted a proposal by PMEI to provide technical assistance in the development of international standards for a VDL/4 technology. VDL/4 is an emerging technology used in airline and maritime communications. In accepting the proposal of PMEI, the SCAA noted that, "the issues involved are of a sensitive nature and we would appreciate if your engagement in this work is kept confidential." Work on the project by PMEI for the SCAA would continue through the development of a protocol simulation model for the VDL/4, including the necessary software.

Defendant, ADSI, Inc., was formed in 2000 to manufacture aviation and maritime safety and communications systems using VDL/4 technology. The evidence presented is supportive of facts upon which an investor might rely in subscribing to stock in ADSI, Inc. In the Private Offering Memorandum furnished potential investors, the seller gives the prospective buyer the following overview of its relationship to the other defendants and to the technology that it seeks to advance:

> ADSI, Inc. . . . was organized by Project Management Enterprises, Inc. ("PMEI") and Dr. Stephen Heppe ("Heppe") primarily to provide data communications networking and information services to the commercial air transport and general aviation industries. The Company intends to deploy its core technology to support a network system that will give aircraft universal connectivity to their corporate operation centers, service providers and business partners. The networking system that the Company intends to utilize is one similar to that used in the wireless phone market. A system for communication will exist between the end user (i.e. the aircraft) and a fixed ground station (i.e. the airline operations center); access to networks and other ground users will also be available. In terms of information being carried over the networks, the services provided are similar to those of Internet providers.
>
> PMEI is a Maryland corporation based in Bethesda, Maryland, whose sole principal is K. Prasad Nair ("Nair"). PMEI develops applications and proprietary software products and provides data communications engineering support services. . . . Since 1994, Nair and Heppe, along with employees of PMEI (the "Employees") have worked together to develop software and technology for a new data communications system that addresses major strategic objectives of both the national and international

community. With the exception of the radio data link protocol which is now an international standard, all rights in the software and technology, along with the rights in any supporting processes or applications, are owned by the Company. . . .

Through the efforts of Nair, Heppe, and the Employees in developing software and participating in the international movement to verify and validate their technology as the new safety and AOC (airline operational control) standard, the Company is poised to exploit its monopolistic advantage over U.S. and foreign providers of aviation data communication and networking services. . . . To the best of the Company's knowledge, no other aviation industry participant or data communication service provider has developed or is capable of developing technology that will meet the VDL/4 Standard by the Effective Date. . . . Aviation Data Systems Innovation, L.L.C. (the "LLC"), the Company's (ADSI, Inc.) predecessor is being dissolved in connection with this Offering. . . . Through the efforts of Nair, Heppe, and others, the LLC participated significantly in the software and technology development for the VDL/4 standard. All rights in such software and technology . . . have been assigned to the company. . . .

The Company intends to seize this window of opportunity to upgrade Front-of-the-plane Communications systems as it has already developed and field tested technology that complies with the VDL/4 Standard. The Company's principals, Nair and Heppe, were instrumental in drafting and presenting the VDL/4 Standard to the ICAO (International Civil Aviation Organization), having participated with the Swedish and German delegations before the ICAO to promote passage and adoption of the VDL/4 Standard and to work with avionics manufacturers to build and test radio equipment to verify technical performance and compliance with the VDL/4 Standard. . . .

In addition, the Company expects the United States Patent and Trademark Office (USPTO) to issue patents for its VDL/4-related technology and applications. . . .

On May 23 2001, the Swedish Civil Aviation Administration commenced an action for damages against PMEI in the United States District Court for the District of Maryland. In that suit, the SCAA alleged, among

other things, that PMEI had "willfully and maliciously appropriated confidential information from SCAA regarding the underlying methods, techniques, and devices that comprise the VDL Mode 4 technology as well as confidential information regarding the strategy to promote the acceptance and implementation of the VDL Mode 4 technology." The SCAA further suggested that ADSI, L.L.C., was involved in the "improper use of confidential information provided by the SCAA to PMEI.

The lawsuit commenced by the SCAA was dismissed as settled by the District Court by Order entered on May 20, 2004. The settlement provided for an abandonment by PMEI of certain patent applications relating to the VDL Mode 4 technology in exchange for the payment of a settlement by the SCAA to PMEI.

In determining the materiality of a statement or omission, the Court is guided by what a, "a reasonable investor would have considered significant in making investment decisions." *In re Marsh & McLennan Cos., Inc., Sec. Litig.*, 2006 U.S. Dist. LEXIS 49525, at 31 (S.D. N.Y. 2006) (citation omitted). In the context of alleged omissions, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at 31 (citation omitted). With respect to the prospect of litigation in the case of "a company's failure to disclose impending litigation, there is no requirement 'to make disclosures predicting such litigation,' 'absent an allegation that the litigation' 'was substantially certain to occur during the relevant period'." *Id.* at 39.

As this Court has noted in another case, "In searching the evidence for a factual basis for recovery by the plaintiff, the Court must determine whether there are facts which the defendant failed to reveal to the plaintiff to which a reasonable man would attach importance in his choice of action in the stock transaction at issue." *Furr v. Echols*, 20 Cir. L16122 (1996) [citing *SEC v. Texas Gulf Sulfur* (2d Cir. 1969)]. Moreover, " 'soft' 'puffing statements . . . generally lack materiality because the market price of a share is not inflated by vague statements predicting growth. . . . No reasonable investor would rely on these statements . . . predictions of future growth' not worded as guarantees are generally not actionable under federal securities laws." *Hillson Partners, Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 211 (4th Cir. 1994) (citation omitted).

The interpretations of federal securities laws are helpful when construing the Virginia Securities Act. *Dunn* at 430; *Furr v. Echols*, 36 Va. Cir. 349, 349-50 (1995); *Asher v. Commonwealth*, 12 Va. App. 1105 (1991).

In the instant case, the Plaintiffs seek recovery under the Virginia Securities Act for statements made or omitted from the Private Offering Memorandum, as well as, in two cases based upon statements made in response to questions asked respecting pending litigation. In summary, based upon the evidence as to the alleged default actions of the defendants, the Court is of the opinion that the Private Offering Memorandum does not contain materially untrue statements of facts that a prudent investor would rely upon in making an investment in the technology that ADSI, Inc., sought to exploit. The involvement of PMEI in the development of standards and protocols is alluded to in the memorandum. Moreover, the role ADSI, Inc., would play in bringing into production the VDL/4 technology and the previous roles of the principal actors are correctly stated. Statements that would suggest ADSI, Inc., had a unique advantage over possible competitors, such as, that the company was "poised to exploit its monopolistic advantage," are mere hyperbole or puffing.

Plaintiff has identified the various violations that they alleged to have occurred prior to the filing of the lawsuit by the SCAA. These are the alleged misstatements the Court must look to in determining the merits of the plaintiffs' case. As otherwise noted, those persons who purchased stock subsequent to the filing of the action in Federal Court have the right to recover based upon the failure of the Private Offering Memorandum to bring to the attention of investors the fact of the filing of the lawsuit.

The alleged defaults on the part of the Defendants fall into several categories. In each case, the evidence does not support recovery under the State Securities Act. As to those involving the failure to fully disclose the relationship of PMEI, plaintiffs claim that a prudent investor might divine from such a disclosure the possibility of a future claim being filed that would impact on his or her investment decision. Defendants are correct in asserting that, under the facts of this case, the evidence fails to support the conclusion that the defendants possessed knowledge of facts that would suggest that their actions would give rise to the substantial likelihood of a lawsuit affecting ADSI, Inc.

Plaintiffs contend the Private Offering Memorandum contains various statements that would lead the investor to conclude that ADSI, Inc., occupied a superior competitive position to others seeking to develop the VDL/4 technology. While the SCAA, an agency of the Swedish Government, participated in the development of the technology, ADSI, Inc., did not lie or make material misrepresentations in making the assertion that it was the only private company capable of providing the VDL/4 compliant system.

While plaintiffs would suggest to the contrary, the Private Offering Memorandum does not make material misstatements of fact concerning the relationship of the principals to the corporation. Similarly, the nature of the international acceptance of the technology is not falsely portrayed in such a way as to constitute material misrepresentation.

Excepting the failure to divulge the existence of the lawsuit to those persons investing subsequent to such filing, the evidence does not support recovery under Va. Code Ann. § 13.1-522.

Those alleged misrepresentations contained in the Private Offering Memorandum that have been pleaded as a basis for relief under Va. Code Ann. § 13.1-522(A) and (C) are either not "material" within the contemplation of the Virginia Securities Act or based upon fact for which recovery cannot be had. In making this determination, the Court has, as it must, confined its consideration only to those misrepresentations that are set out in the complaint.

The Court finds that the failure to inform the plaintiffs who invested subsequent to the filing of the suit in the United States District Court for the District of Maryland against PMEI is a "material omission" for which those persons may recover pursuant to Va. Code Ann. § 13.1-522(A), (C). Name and dates of purchase on Defendants' Exhibit #27 identify those plaintiffs. Two investors indicated that, in addition to reviewing the Private Offering Memorandum, they had made specific inquiry regarding the status of any litigation prior to purchasing stock. These two persons were also within the class of investors who purchased stock subsequent to the filing in the Federal Court of the lawsuit against PMEI. The Court finds the testimony of the investors to be credible as to this point. Their testimony is supported by, and consistent with, the silence exhibited by ADSI, Inc., and those in its control when under a duty to speak.

While the suit in Federal Court did not name ADSI, Inc., as a defendant, the action by ADSI, Inc., was a frontal assault on the underlying technology that was the object of the private offering. The development by PMEI of the protocols and software in conjunction with the SCAA was critical to the "deployment of its core technology" by ADSI, Inc. Any threatened lawsuit that would call into question the development of the technology sought to be financed would raise the eyebrow of even the most casual of investors. However, there is sufficient evidence upon which to conclude substantially that litigation was to follow the actions of ADSI, Inc., attendant to the makeup of PMEI's relationship with the SCAA. While the SCAA and PMEI parted their relationship with unhappiness, hurt feelings and a cheerless parting of the ways, this does not suggest the possibility of legal action. Neither PMEI nor

ADSI, Inc., can be held accountable to investors just because a lawsuit was subsequently filed. While the defendants were aware of the facts upon which the lawsuit was predicted, knowledge of those facts does not equate to a knowledge of the intention of the SCAA prior to the suit actually being filed.

The Court finds that, to the extent the plaintiffs are entitled to recovery, they are entitled to recover against the corporation (Va. Code Ann. § 13.1-522(A)) and against the "control group defendants." While the defendant would suggest that Ms. Neil should not be charged with liability as a member of the control group, the court disagrees. Ms. Neil was a director of ADSI, Inc., prepared corporate documents, and was aware of the litigation. She has not borne her burden of proof that she did not know and in the exercise of reasonable care could not have known of the facts by which liability exists in this case.

Mr. Hantzes may draw a draft order consistent with this opinion granting the relief sought as to those plaintiffs who acquired stock subsequent to the filing of the lawsuit by SCAA and denying relief as to those acquiring stock before that time. The relief shall be in accordance with the statute. Any damages in excess of those provided by statute are denied. Counsel for the plaintiffs shall present an affidavit of attorney's fees through the date of the presentation of the order, as well as the appropriate interest calculation on sums owed the plaintiffs who are entitled to recover under the order.